## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES ex rel.** **[UNDER SEAL],** Plaintiff, v. **[UNDER SEAL],** Defendant. | Case: 1:21-cv-00674 JURY DEMAND Assigned To : Jackson, Ketanji Brown Assign. Date : 3/10/2021 Description: Gen. Civil (E-DECK) **COMPLAINT** *DEMAND FOR JURY TRIAL* |

**UNDER SEAL COMPLAINT UNDER THE FALSE CLAIMS ACT**



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**UNITED STATES ex rel.**
**GRANT TURNER;**

1612 K Street, N.W., Suite
1100 Washington, D.C. 20006

Plaintiff,

v.

**McGUIREWOODS,**

2001 K St NW #400
Washington, D.C. 20006

Defendant.

Case No. _____

**COMPLAINT**

*DEMAND FOR JURY TRIAL*

### UNDER SEAL COMPLAINT UNDER THE FALSE CLAIMS ACT

1. This case is about wrongful payments and gross waste of millions of taxpayer dollars improperly authorized by the former Chief Executive Officer (CEO) of the U.S. Agency for Global Media (USAGM), Michael Pack. Pack resigned as CEO on January 20, 2021, within two hours of President Biden's inauguration.

2. Among its missions, USAGM oversees the Voice of America (VOA) and provides federal grants to other media networks which collectively reach a worldwide audience of over 350 million.

3. The wrongful payments -- to defendant McGuireWoods, a large law firm -- started in the second half of 2020 and exceed $1.5 million. CEO Pack knowingly or in reckless disregard awarded an illegal sole source, "no bid" contract to defendant McGuireWoods. The defendant knew or was reckless in not knowing that the services provided were either duplicative of readily available federal government resources, available at substantially lower cost from other service providers and/or not justified.



4. This is a *qui* tam complaint under the federal False Claims Act, 31 U.S.C. § 3729 *et seq.* (FCA).

5. Relator Grant Turner is a current USAGM employee who was placed on administrative leave by CEO Pack on August 12, 2020 – the same day that defendant McGuireWoods was hired by CEO Pack. Defendant McGuireWoods was hired, among other reasons, to compile a personnel dossier and gather information on Mr. Turner and other USAGM employees – who were also placed on administrative leave on August 12, 2020 – to justify their removal from federal service.

6. In mid-December 2020, USAGM initiated removal proceedings against Mr. Turner and the other employees, in part relying on information gathered by defendant McGuireWoods. USAGM terminated those proceedings following CEO Pack's resignation.

7. Mr. Turner is an original source of information.

8. The contract between USAGM and defendant McGuireWoods was the result of illegality. It arose out of and was in furtherance of a conspiracy by CEO Pack and his allies within USAGM and elsewhere in the federal government and defendant McGuireWoods to defraud the United States (Government): by interfering with or obstructing legitimate Government activity; or by making wrongful use of a governmental instrumentality (USAGM), to pay invoices submitted under the contract, all of which constitute false and fraudulent claims in violation of the FCA, 31 U.S.C. § 3729(a)(1)(A), (B) and (C).

**I.    JURISDICTION**

9. Jurisdiction over this action is established under 28 U.S.C. §1331 on the basis that this complaint arises and presents federal questions under the FCA, and under 31 U.S.C. §

3732(a), entitled "False Claims Jurisdiction," i.e., the defendant submitted and caused to be submitted false and fraudulent claims, and false and fraudulent statements material to false and fraudulent claims concerning USAGM, which is located within this District.

## II. VENUE

10. Venue lies in this United States District Court under 28 U.S.C. § 1391(b) and (c), because the acts proscribed by 31 U.S.C. § 3729 occurred in this District.

## III. THE PARTIES

11. Relator Grant Turner is the Chief Financial Officer (CFO) of USAGM who was put on administrative leave by CEO Pack on August 12, 2020; he returned to full time employment at USAGM following CEO Pack's resignation.

12. CFO Turner has been a public servant for nearly two decades. An expert in federal budgeting and financial management, CFO Turner has served during both Democratic and Republican administrations in the Government Accountability Office, the Office of Management and Budget, the Centers for Disease Control and Prevention, and USAGM. Between 2019 and 2020, CFO Turner also served as USAGM's interim CEO until CEO Pack's arrival in June 2020.

13. From August 12, 2020 through January 20, 2021, CFO Turner was placed on indefinite administrative leave. His USAGM computer, email, building access badge was confiscated. CFO Turner was reinstated after January 20, 2020 and was provided with USAGM resources.

14. On January 19, 2021, CFO Turner filed whistleblower complaints concerning the matters alleged herein with the U.S. Congress, the U.S. Office of Special Counsel and the U.S. Department of State Office of Inspector General, all of whom oversee USAGM.

15. CEO Pack is the former CEO of USAGM. He was confirmed by the U.S. Senate on June 4, 2020; he resigned on January 20, 2021.

16. Defendant McGuireWoods is a large law firm with an office in Washington, D.C.; it employs more than 1,000 lawyers in 21 offices worldwide."[1] It describes itself as "a full-service firm providing legal and public affairs solutions to corporate, individual and nonprofit clients worldwide …."[2]

17. On August 12, 2020, the same day that CFO Turner was placed on indefinite administrative leave, CEO Pack entered into a contract with John D. Adams, a McGuireWoods partner and chair of its Government Investigations Department. The scope of the agreed-upon services to be rendered was "to conduct an internal investigation on behalf of USAGM regarding the complaints of potential misconduct by employees."

18. On August 26, 2020, CEO Pack entered into a similar contract with defendant McGuireWoods. The scope of services to be rendered was the same. Defendant McGuireWoods began billing USAGM for services rendered the same day.

19. On January 19, 2021, informed CEO Pack in a letter that "our work on the investigation in now completed."

---

[1] https://en.wikipedia.org/wiki/McGuireWoods.

[2] htttps://www.mcguirewoods.com/about-us

4

20. For the entire duration of defendant McGuireWood's engagement with USAGM, CFO Turner was on administrative leave, without access to USAGM computers, email services, telephones, buildings and other USAGM resources.

## IV. THE FACTS

*About USAGM*

21. USAGM is an independent federal agency; its mission is "to inform, engage, and connect people around the world in support of freedom and democracy."[3]

22. USAGM oversees VOA, a federal entity, and it funds the Office of Cuba Broadcasting, Radio Free Asia, Radio Free Europe/Radio Liberty, and the Middle East Broadcasting Networks. These networks broadcast in 62 languages and reach a cumulative weekly audience of over 350 million people in more than 100 countries. They produce more than 3,000 hours of original programming each week. USAGM's annual budget is over $800 million for fiscal year 2021.

*The "Purge"*

23. CEO Pack was confirmed by the Senate on June 4, 2020. On his first day at USAGM, June 17, 2020, CEO Pack fired the Presidents and members of the boards of directors of the broadcast networks funded by the agency -- Radio Free Asia, Radio Free Europe/Radio Liberty, the Middle East Broadcasting Networks -- froze all USAGM contracting and hiring and revoked all delegated authorities granted to USAGM senior staff. The previous day, the Director

---

[3] *Who We Are,* available at https://www.usagm.gov/who-we-are.

and Deputy Director of VOA resigned; CEO Pack also removed the VOA editor responsible for standards and practices on June 17.

24. On August 12, 2020, CEO Pack – in what was widely described as a "purge" – removed six long-time senior USAGM officials, career civil servants.[4] The six – CFO Turner, USAGM's General Counsel, Executive Director, Deputy Director for Operations; Director of Management Services and Chief Strategy Officer – were placed on indefinite administrative leave.

*The McGuireWoods Contract*

25. On the same day as the purge, August 12, 2020, CEO Pack signed a sole source contract with defendant McGuireWoods in order to gather evidence for use to justify the purge.

26. Under the contract, defendant McGuireWoods initially agreed to conduct an internal investigation of current and former employees – for USAGM, not the U.S. Government – regarding complaints of employee misconduct. In ensuing months, the scope of work expanded.

27. CEO Pack gave defendant McGuireWoods attorneys, staff and contractors access to the email archives of USAGM. They reviewed these archives for the purged employees and created dossiers on each one. The dossiers were then used as the basis to commence administrative removal proceedings – to permanently remove each purged employee from federal service.

---

[4] Politico, *Trump Appointee Deepens Purge of U.S. Global Media Agency* (Aug. 12, 2020), available at https://www.politico.com/news/2020/08/12/trump-purge-us-agency-global-media-394403.

28. From on or about August 12, 2020 through on or about January 19, 2021, defendant McGuireWoods presented to USAGM monthly invoices totaling more than $1.5 million for services provided by McGuireWoods attorneys, staff and contractors. CEO Pack authorized and directed the payment of these invoices.

*An Illegal Contract*

29. By law and policy, federal agencies may secure the services of private law firms in limited circumstances. Federal Acquisition Regulations (FAR) state that advisory and assistance services shall not be used "to obtain professional or technical advice which is readily available within the agency or another Federal agency." 48 CFR § 37.203(c)(5).

30. Recommendation 87-3 of the Administrative Conference of the United States, *Agency Hiring of Private Attorneys,* 52 FR 23632 (June 24, 1987) "applies to any agency that hires private attorneys to represent the agency or to provide it with legal advice, i.e., where an attorney client relationship is established." (Scope of Recommendation). It further recommends, in relevant part:

- (a) *Government agencies should continue to obtain most of the legal services that they need from government attorneys.*

  (b) When agencies cannot develop the necessary legal resources in-house, *they should explore the possibility of utilizing the expertise found at other agencies of the government*, on a temporary or short-term basis. … (Use of In-House Government Attorneys) (Emphasis added.)

- "Each agency that anticipates a need to hire private attorneys *should prepare written public guidelines* detailing: (a) The criteria for deciding whether or not to seek outside legal assistance, (b) the factors relevant to the choice of attorney or firm, (c) the procedures for procurement, (d) appropriate limitations on counsel's authority, (e) conflict of interest and other ethical considerations, (f) billing practices, and (g) procedures for review of fees." (Guidelines for Hiring Outside Counsel) (Emphasis added).

- When an agency is considering whether to hire outside counsel, the agency should first assure itself (a) that it is authorized by law to hire outside counsel for the particular matter, (b) that it can exercise sufficient control over the performance of the services to be obtained, and (c) *that such employment is cost-effective.* The price of the services should not, however, be the sole test of cost-effectiveness. Also of importance in assessing the benefit to be gained from the use of outside counsel are the quality of the services provided, the availability of necessary expertise within the agency, and the need for an outside independent perspective. (The Decision to Hire Outside Counsel) (Emphasis added).

- In obtaining outside counsel, the agency *should employ appropriate competitive procedures to assure that the requisite quality of service is obtained at a reasonable price without the fact or appearance of favoritism.* … (The Decision to Hire Outside Counsel) (Emphasis added).

31.     The August 12, 2020 and August 26, 2020 contracts between USAGM (authorized by CEO Pack) and defendant McGuireWoods was illegal. CEO Pack and defendant McGuireWoods knew or recklessly disregarded:

- The contract was sole source, not subject to full and open competition as required by law;

- None of the circumstances under law permitting other than full and open competition were present or applied;

- USAGM's need for the services provided by McGuireWoods was not of an unusual or compelling urgency;

- The services provided by McGuireWoods were readily available within the agency or another Federal agency;

- USAGM had no written public guidelines for hiring outside counsel;

- The fees charged by McGuireWoods for its services were unreasonable and not cost effective. Other attorneys and law firms provided the equivalent services offered by McGuireWoods for at substantially lower cost;

- CEO Pack, a Trump political appointee, and John D. Adams, the lead partner of defendant McGuireWoods, share professional and political connections;

- False representations and material omissions were used to justify the award and execution of the contract; and

- The contract had the appearance of favoritism.

## VI. THE CONSPIRACY

32. From on or about August 12, 2021 to through on or about January 19, 2021, CEO Pack and defendant McGuireWoods each conspired with one or more persons to get a false or fraudulent claim paid by the United States, that defendant McGuireWoods performed any act to effect the object of the conspiracy, the United States suffered damages as a result of the false or fraudulent claim, all in violation of 31 U.S.C. § 3729(a)(1)(C).

33. An object of the conspiracy was defendant's agreement to rely on a contract which it knew or was reckless in not knowing was illegal in order to present false and fraudulent claims and to make and use false statements material to false and fraudulent claims.

34. Among the overt acts in furtherance of the conspiracy, CEO Pack and defendant McGuireWoods committed the following:

- Negotiating with defendant McGuireWoods over the terms of providing legal services to USAGM;

- Entering in contracts on behalf of USAGM and defendant McGuireWoods;

- Defendant McGuireWoods' submission of invoices to USAGM for payments;
- Using wires in interstate commerce to transmit communications containing false representations and material omissions about the contract.

## VII. CLAIMS

### Count I – Presentment of False and Fraudulent Claims

35. Plaintiff incorporates by reference, as though fully set forth here, paragraphs 1 through 29, above.

36. Beginning on or about August 12, 2020 and continuing through on or about January 19, 2021, defendant McGuireWoods knowingly or in reckless disregard presented, or caused to be presented, false or fraudulent claims for payment or approval, i.e., claims for payment of attorneys fees and costs under a contract with USAGM. Those claims were false and fraudulent for the reasons set forth above.

### Count II – Making and Using False and Fraudulent Records and Statements Material to False Claims

37. Plaintiff incorporates by reference, as though fully set forth here, paragraphs 1 through 29, above.

38. Beginning on or about August 12, 2020 and continuing through on or about January 19, 2021, defendant McGuireWoods knowingly or recklessly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim.

### Count III – Conspiracy

39. Plaintiff incorporates by reference, as though fully set forth here, paragraphs 1 through 29, above.

40. Beginning on or about August 12, 2020 and continuing through on or about January 19, 2021, defendant McGuireWoods knowingly or recklessly engaged in a scheme to defraud the Government by interfering with or obstructing the legitimate Government activity of USAGM; or by making wrongful use of a governmental instrumentality, USAGM, and to commit a violation of 31 U.S.C. 3729(1)(a)(A) and (B).

## IX.  DAMAGES

41. As a result of the foregoing violations, the Government suffered at least $1.5 million in damages, which is subject to trebling and to civil penalties under the FCA.

March 5, 2021

                         Respectfully Submitted,

                         GOVERNMENT ACCOUNTABILITY PROJECT

                         */s/ John A. Kolar*

                         By:    John A. Kolar
                                 David Z. Seide (DC Bar No. 421899)

                         1612 K Street, N.W., Suite 1100
                         Washington, D.C. 20006
                         202-457-0034, Ext. 197
                         jackk@whistleblower.org;
                         davids@whistleblower.org

                         Attorneys for Relator Grant Turner